**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| WRB PARTNERS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:20-cv-2582 |
| | ) | |
| v. | ) | Judge Solomon Oliver |
| | ) | |
| RGN-CLEVELAND II, LLC, | ) | Magistrate Judge David A. Ruiz |
| | ) | |
| Defendant. | ) | **JURY DEMANDED** |
| | ) | |

**FIRST AMENDED COMPLAINT FOR
DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES**

Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), Plaintiff WRB Partners, LLC ("WRB") hereby amends its Complaint as a matter of course, brings this First Amended Complaint for Declaratory Judgment, Injunctive Relief and Damages against Defendant RGN-Cleveland II, LLC ("RGN"), and states as follows:

**Parties, Jurisdiction and Venue**

1.      Plaintiff WRB is an Ohio limited liability company and the owner of commercial real estate located in downtown Cleveland, Ohio at the address of 1468 West Ninth Street, Cleveland, Ohio 44113 (the "Premises"). All of WRB's members are citizens of Ohio.

2.      Defendant RGN is a Delaware limited liability company owned and controlled by Regus Corporation ("Regus"). Regus is a Delaware corporation that, on information and belief, is the only member of RGN. Regus is in the business of providing office and co-working spaces to paying customers and members under the "Regus" brand. RGN is one of hundreds of special purpose entities ("SPEs") formed by Regus to serve as the named tenant for a Regus co-working space, this one to be located in Cleveland at the Premises.

1

12340646.2

3.      This Court has personal jurisdiction over RGN under Federal Rule of Civil Procedure 4(k) and R.C. § 2307.382(A) because, among other things, RGN has a leasehold interest in the Premises, and also because RGN has consented to this Court's jurisdiction by removing the litigation to this Court.

4.      This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

5.      Venue is proper in this Court under 28 U.S.C. § 1441(a) because this matter was removed from the Court of Common Pleas of Cuyahoga County, Ohio, which this District embraces.

**Nature of the Case**

6.      This dispute arises as a result of RGN's failure to provide WRB with adequate assurances that it will perform its obligations as tenant under the lease agreement between the parties. RGN is just one of many Regus SPEs created to serve as a nominal tenant for a Regus co-working space. To date, more than 100 of RGN's affiliate SPEs have declared bankruptcy, and RGN appears poised to do the same. RGN's bankrupt affiliates have already used their bankruptcies to demand costly lease modifications from their respective landlords. WRB files this declaratory judgment action to ensure that it does not become the next landlord forced into a harsh and costly lease modification with a Regus SPE.

7.      RGN is now lobbying WRB to pour more than $1.6 million into improvements for the leased Premises—improvements that will make the Premises unmarketable to potential tenants other than RGN. But RGN's ability to perform under the lease has been, and remains, in serious doubt given the very public financial struggles of its affiliate companies, its failure to perform

2

certain existing obligations under the lease, and its affiliates' bankruptcy strategy of maximizing leverage against landlords in order to extract costly lease modifications.

8.      WRB therefore demanded adequate assurances from RGN: primarily financial information that would demonstrate RGN's ability to perform the lease. RGN refused to provide these adequate assurances, and by doing so repudiated and anticipatorily breached the lease. Even though RGN repudiated and anticipatorily breached the Lease by refusing to provide WRB with adequate assurances, RGN continues to maintain that the Lease is in effect and binding upon WRB. By doing so, RGN is seeking to prevent WRB from reletting the Premises to another tenant, thereby inflicting ongoing harm upon WRB, and RGN is seeking to prevent WRB from mitigating the damages caused by RGN's breach and repudiation of the Lease.

9.      WRB therefore brings this action seeking a declaration that RGN has repudiated the lease and that WRB has no further obligation to perform under the Lease.  In addition, WRB seeks damages caused by RGN's breach, repudiation of the Lease and ongoing refusal to acknowledge the termination of the Lease.

## Facts

### A.      WRB and RGN Enter into the Lease.

10.      On or about December 13, 2019, WRB as landlord and RGN as tenant executed a Lease Agreement (the "Lease") under which WRB would lease the Premises to RGN for a term of 12 years. Attached hereto as **Exhibit 1** is a true and correct copy of the Lease.

11.      Tenant's obligations under the Lease were guaranteed by IWG Global Investments SARL ("IWG"), a Luxemburg-based multinational company that directly or indirectly owns Regus. *See* Lease Art. 21. A true and correct copy of IWG's Guaranty Agreement in relation to the Lease is attached hereto as **Exhibit 2**.

3

12.     As contemplated by the Lease, RGN was to operate the Premises as a co-working space under the Regus brand. At the time the Lease was executed, the Premises was not built out to operate as a co-working space. As such, the Lease included terms contemplating a build-out of the Premises. The improvements to be made to the Premises to turn it into a functional co-working space were deemed "Tenant's Initial Improvements."

13.     Under Article 17 of the Lease, WRB was to perform certain initial work on the Premises ("Landlord's Initial Work"), including the installation of ceiling lighting and the renovation of the elevator lobby and restrooms located on the second floor. *See* Ex. 1, Lease § 17.1 & Ex. E thereto. For its part, RGN was to submit construction plans for Tenant's Initial Improvements to WRB for WRB's approval. *See id.* § 17.3(i). The Lease also obligated RGN to deliver a variety of specific items to WRB "[p]rior to beginning Tenant's Initial Improvements," including a builder's risk insurance policy naming WRB and its mortgagee as additional insureds, plans for the construction of the Tenant's Initial Improvements, certificates of insurance evidencing insurance coverages required by the Lease, and the names of RGN's proposed contractor, subcontractors and architect, for WRB's approval. *See id.*

14.     The Lease granted RGN a Tenant Improvement Allowance of $1,611,780.00. Ex. 1, Lease § 1.1, at 6. As contemplated by the Lease, RGN was to have responsibility for planning and carrying out Tenant's Initial Improvements (subject to WRB's review and approval), and the Tenant Improvement Allowance was to be paid by WRB toward Tenant's Initial Improvements as they were completed, pursuant to Section 17.3(iii) of the Lease.

15.     Under the Lease, RGN was to begin paying rent to WRB after the build-out of the Premises was completed or after it opened for business in the Premises, whichever occurred earlier (i.e., on the "Rent Commencement Date"). *See* Ex. 1, Lease § 1.1, at 4–5.

4

**B.**     **RGN Fails to Provide Items Required by the Lease and Fails to Work Toward Completing Tenant's Initial Improvements While Dozens of Its Affiliates File for Bankruptcy.**

16.     WRB substantially and timely completed Landlord's Initial Work and delivered the Premises to RGN in March 2020. This work was significant, and involved, among other things, WRB's expenditure of approximately $250,000 to renovate an exclusive elevator for RGN's use, and its additional expenditure of hundreds of thousands of dollars to relocate other tenants in order to accommodate RGN's use and occupancy of the Premises. WRB incurred these expenses in accordance with the Lease and in reliance on RGN's contractual promise that it would perform its obligations under the Lease.

17.     RGN was then supposed to begin work on Tenant's Initial Improvements, but instead it did almost nothing throughout the spring and summer of 2020. By August 2020, RGN had not provided WRB with construction plans, had not begun substantial work on Tenant's Initial Improvements, and indeed had not even obtained a permit from the City of Cleveland to begin work on Tenant's Initial Improvements. In addition, RGN had failed to perform several Lease obligations, specifically:

    a)  RGN had failed to procure insurance coverage, as required by Section 6.1 of the Lease;

    b)  RGN had failed to provide WRB with certificates of insurance evidencing that it had obtained the necessary insurance coverage, as required by Section 6.2 of the Lease;

    c)  RGN had failed to deliver to WRB a builder's risk insurance policy naming WRB and its mortgagee as additional insureds, as required by Section 17.3(i) of the Lease;

5

d)  RGN had failed to provide WRB with the names of its proposed contractor, subcontractors and architect, for WRB's approval, as required by Section 17.3(i) of the Lease; and

e)  RGN had failed to provide WRB with a W-9 Form and Contact Information Form that WRB had previously requested, which were required to enable WRB to prepare for billing on the Rent Commencement Date.

18.  Further, RGN unreasonably refused to accept WRB's tender of the Premises to it after the completion of Landlord's Initial Work, in an effort to delay the commencement of construction on Tenant's Initial Improvements and to delay the Rent Commencement Date.

19.  RGN's inaction was particularly alarming because, by August 2020, dozens of its affiliates from around the country had already declared bankruptcy, and the CEO of IWG PLC, an entity related to RGN's parent company and guarantor, IWG, had announced "plans to close around 100 [more] locations in the second half of the year." *See* **Exhibit 3**, Konrad Putzier, *Co-Working Companies Expanded Rapidly. Now They're Retreating Fast.*, Property Report, Aug. 11, 2020. IWG PLC's CEO also publicly announced plans to shepherd SPEs like RGN into strategic bankruptcies to "get out of long-term lease obligations." *Id.* at 4.

20.  The fact that RGN was not working toward the planning or completion of Tenant's Initial Improvements and had not performed several requirements of the Lease, coupled with the fact that RGN's affiliates from around the country were declaring bankruptcy in droves, reasonably caused WRB to be concerned that RGN would not be able to continue performing the Lease by, for example, paying rent on and after the Rent Commencement Date.

12340646.2

**C.  WRB Demands that RGN Provide It with Adequate Assurances but RGN Fails to Do So.**

21.  Because of its reasonable concern that RGN would be unable to perform the Lease, on August 21, 2020, WRB sent RGN a formal request for adequate assurances (the "First Request for Adequate Assurances"). The First Request for Adequate Assurances demanded that RGN demonstrate its continuing willingness and ability to perform its obligations under the Lease by providing WRB with the deliverables required of it under the Lease, which it had theretofore failed to provide, as set forth above. *See supra* ¶ 17. It granted RGN until August 28, 2020 to provide these items, and advised RGN, "If you fail to [provide the requested materials], we will consider that failure to constitute a repudiation of [RGN's] obligations under the Lease . . . ." Attached hereto as **Exhibit 4** is a true and correct copy of the First Request for Adequate Assurances.

22.  The August 28 deadline came and went, but by September 2020, RGN still had not provided WRB with all of the items requested in its First Request for Adequate Assurances. For instance, RGN had not provided WRB with a builder's risk insurance policy, the identities of its subcontractors, or detailed construction plans for Tenant's Initial Improvements—all of which were required by Section 17.3(i) of the Lease.

**D.  RGN Abruptly Begins Work on the Premises Without Having Provided Adequate Assurances, While Its Affiliates Continue to Declare Bankruptcy in Droves.**

23.  Despite having failed to provide items required by the Lease and demanded by WRB as adequate assurances, RGN retained a contractor and began demolition work on the Premises in September 2020. When it began work, RGN still had not obtained a permit from the City of Cleveland authorizing it to begin work on Tenant's Initial Improvements. This was a breach

12340646.2

of Section 7.4 of the Lease, which obligated RGN to comply with all applicable governmental requirements in connection with work on the Premises.

24.     RGN's retention of a contractor was abrupt and unexpected given its months of inactivity over the spring and summer. It appeared to be part of a new whirlwind approach to the Lease under which RGN would seek to perform Tenant's Initial Improvements as quickly as possible in order to force WRB to fund the Tenant Improvement Allowance. To ensure that RGN would receive a reasonable bid for the work to be performed, WRB had offered to leverage the bid from RGN's contractor against that of another contractor with whom WRB had worked in the past. RGN initially agreed, but then failed to follow through on WRB's offer. RGN ultimately executed a contract with its contractor without obtaining a competing bid from WRB's suggested contractor.

25.     Meanwhile, RGN's affiliates continued to file bankruptcies en masse. By late September 2020, more than 100 of RGN's affiliates had declared bankruptcy. *See* **Exhibit 5**, Jonathan Randles, *Regus Affiliates to Tap Bankruptcy Loan to Pay Rent on Co-Working Spaces*, Wall Street Journal, Sept. 29, 2020. In their bankruptcy proceedings, those affiliates made clear that they are highly integrated with each other (legally, financially and operationally), that they function under a business model involving myriad intercompany transfers, transactions and obligations, and that through the bankruptcies or otherwise they intend to seek "forbearances, temporary accommodations and where possible, permanent modifications" from their landlords. *See* **Exhibit 6**, Declaration of James S. Feltman in Support of Chapter 11 Petitions and First Day Relief, ¶ 27.

26.     These developments again raised reasonable concerns within WRB that RGN would be unable to perform under the Lease. RGN's newfound urgency to construct Tenant's Initial Improvements without first providing the requested adequate assurances was particularly

worrying because the improvements contemplated by RGN would render the Premises unmarketable to most prospective tenants other than, possibly, some co-working companies. If RGN were to order its contractor to make the improvements, pay the contractor with the Tenant Improvement Allowance funded by WRB, and then declare bankruptcy, it would all but force WRB to renegotiate the Lease on far less favorable terms.

## E.  WRB Again Requests Adequate Assurances from RGN, Which Again Fails to Provide Them.

27.     In light of its continuing reasonable concerns about RGN's ability to perform, on October 3, 2020, WRB sent a Second Request for Adequate Assurances to RGN. The Second Request for Adequate Assurances sought a variety of financial information from RGN that would give WRB confidence that RGN was able to perform, including its most recent monthly financial statements, financial projections, and capital expenditure budgets, and those of its guarantor, IWG. The Second Request for Adequate Assurances demanded that RGN provide this information no later than October 12, 2020. A true and correct copy of the Second Request for Adequate Assurances is attached hereto as **Exhibit 7**.

28.     The October 12, 2020 deadline came and went without RGN providing the materials requested in the Second Request for Adequate Assurances. As of the date of this Complaint, RGN still has not provided WRB with the requested materials, including its most recent monthly financial statements, financial projections, and capital expenditure budgets, as well as those of its guarantor, IWG.

29.     In addition, RGN still has not provided WRB with many of the items that the Lease expressly requires it to provide, including a builder's risk insurance policy and construction plans sufficiently detailed for WRB to review and approve, as required by Lease Section 17.3(iii).

9

30. Further, RGN still has not obtained a permit from the City of Cleveland for Tenant's Initial Improvements. Without this permit, work cannot legally be performed on the Premises.

31. RGN having breached the Lease, the Lease is terminated. WRB informed RGN of the termination of the Lease by letter of October 13, 2020. A true and correct copy of this letter is attached hereto as **Exhibit 8**.

**F.     WRB Requires a Declaration that RGN Has Repudiated the Lease, that the Lease Is Terminated, and that WRB Is No Longer Obligated to Perform.**

32. Because RGN has not obtained the necessary permits, WRB demanded on October 9, 2020 that RGN immediately cease all work on the Premises. Attached hereto as **Exhibit 9** is a true and correct copy of the email WRB's property manager transmitted to RGN's parent company demanding that RGN cease work unless and until it obtains the proper permits.

33. However, even if RGN obtains the necessary permits, it still has not provided the adequate assurances WRB reasonably requested of it. RGN's failure and refusal to provide adequate assurances amounts to a repudiation and anticipatory breach of the Lease.

34. In light of RGN's repudiation and anticipatory breach of the Lease, WRB is unwilling to continue performing the Lease by, among other things, funding Tenant's Initial Improvements. It appears that RGN is setting itself up to gain maximum leverage over WRB by forcing WRB to fund Tenant's Initial Improvements—thereby converting the Premises into a space that will be unsuitable to relet to other parties—then declaring bankruptcy to force WRB into a punishingly disadvantageous renegotiation of the Lease.

35. WRB therefore requires a declaration from this Court providing that RGN has repudiated its obligations under the Lease, that the Lease is terminated, and that WRB is relieved of its obligation to continue performing the Lease. Without such a declaration, the parties' rights

12340646.2

and obligations under the Lease will remain in doubt, and they will be unable to conduct business with the resulting legal uncertainty concerning their rights and obligations.

**G.      WRB Requires an Injunction Prohibiting RGN from Continuing to Perform Work on the Premises.**

36.      Even though RGN failed to acquire a permit to construct Tenant's Initial Improvements at the Premises, and even though WRB ordered RGN to cease and desist any construction or demolition efforts without that permit (*see* Exs. 8, 9), and even though RGN has repudiated the Lease by failing to provide adequate assurances of performance, and WRB has resultantly terminated the Lease (*see* Ex. 8), RGN has not confirmed, as of the filing of this First Amended Complaint, that it will cease and desist from performing demolition and construction work on the Premises.

37.      If RGN's contractor is permitted to continue performing demolition and/or construction work on the Premises, WRB will be irreparably harmed. RGN's planned work will transform the Premises into a space unmarketable to most businesses other than co-working companies, drastically diminishing the value of RGN's real property. In addition, RGN transparently plans to force WRB to pay the Tenant Improvement Allowance of more than $1.6 million to finance Tenant's Initial Improvements, and then swiftly declare bankruptcy to force a renegotiation of the Lease. RGN's imminent insolvency will prevent WRB from collecting on any money judgment WRB obtains in this or any other litigation.

**H.      RGN's Refusal to Acknowledge the Termination of the Lease Is Harming WRB.**

38.      Even though WRB duly terminated the Lease and RGN's right of possession in the Premises (*see* Ex. 8), RGN refuses to acknowledge that the Lease has been terminated. Indeed, RGN maintains in this litigation that the Lease remains in effect, and it seeks specific performance of the terminated Lease. *See* D.E. 7, ¶¶ 38–42. RGN's refusal to acknowledge the termination of

12340646.2

the Lease has created a cloud of uncertainty that seeks to prevent WRB from reletting the Premises to another tenant.

39.     As a result, WRB is incurring damages. The Premises is sitting empty, half-demolished, and in legal limbo as a result of RGN's actions. WRB wishes to relet the Premises as soon as possible to mitigate the damages RGN's breach and repudiation of the Lease have caused, but WRB's efforts to do so are being impaired by RGN as RGN continues to claim publicly that it holds a leasehold interest in the Premises.

<u>**COUNT I:**</u>
**Declaratory Judgment**

40.     WRB hereby incorporates and repeats the allegations set forth in paragraphs 1–39 of this Complaint as though fully set forth herein.

41.     There exists an actual controversy and genuine dispute between WRB and RGN concerning whether WRB is obligated to continue performing the Lease in light of RGN's continuing failure and refusal to provide WRB with adequate assurances that it is willing and able to perform its own obligations under the Lease.

42.     WRB is an interested party whose legal relations under the Lease have been cast into uncertainty by RGN's conduct, and it therefore has standing to seek a declaration concerning these matters pursuant to R.C. § 5311.23(B).

43.     The matters on which WRB seeks declaratory relief are justiciable in character.

44.     WRB requires speedy relief to preserve its rights under the Lease.

45.     Pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201, WRB is entitled to a declaration from this Court that:

    a)  RGN has repudiated and/or materially breached the Lease;

12340646.2

b) the Lease is terminated and that RGN has no right of possession in the Premises;

c) WRB has no further obligation to perform under the Lease; and

d) RGN shall pay WRB's expenses and attorneys' fees pursuant to Sections 7.7, 10.3 and 23.6 of the Lease.

**COUNT II:**
**Injunctive Relief**

46.   WRB hereby incorporates and repeats the allegations set forth in paragraphs 1–45 of this Complaint as though fully set forth herein.

47.   WRB is entitled to prevail on the merits of this litigation.

48.   WRB will suffer irreparable injury if an injunction is not granted enjoining RGN and its contractors—and anyone acting for them or on their behalf—from continuing to perform demolition or construction work on Premises, or any other work in connection with Tenant's Initial Improvements.

49.   No third parties will be unjustifiably harmed if the requested injunction is granted.

50.   The public interest will be served by the requested injunction.

51.   Pursuant to Fed. R. Civ. P. 65, WRB is entitled to a judgment from this Court that:

a) enjoins RGN and its contractor—and anyone acting for them or on their behalf—from continuing to perform demolition or construction work on the Premises, or any other work in connection with Tenant's Initial Improvements;

b) enjoins RGN to vacate the Premises and cooperate with WRB's reasonable efforts to relet the Premises to another tenant; and

c) orders RGN to pay WRB's expenses and attorneys' fees pursuant to Sections 7.7, 10.3 and 23.6 of the Lease.

12340646.2

## COUNT III:
### Breach of Contract

52.     WRB hereby incorporates and repeats the allegations set forth in paragraphs 1–51 of this Complaint as though fully set forth herein.

53.     The Lease was a valid and binding contract.

54.     WRB performed its obligations under the Lease.

55.     RGN actually and anticipatorily breached the Lease and repudiated the Lease when it failed to provide WRB with items RGN was obligated to provide to WRB under the Lease and when RGN failed to furnish adequate assurances to WRB after WRB reasonably demanded that RGN do so.

56.     WRB has been harmed by RGN's breaches of the Lease. WRB expended hundreds of thousands of dollars to modify the building and Premises for RGN's use prior to RGN's breaches and WRB is now impaired in it its efforts to relet the Premises because RGN refuses to acknowledge that the Lease has been duly terminated.

57.     WRB is entitled to a judgment from this Court:

a) awarding WRB any and all damages cognizable by law against RGN, which exceed $75,000, arising out of its breaches of the Lease, including without limitation WRB's costs of performing the Lease, WRB's expenses arising out of RGN's anticipatory breach of the Lease and WRB's lost rent, revenue and other opportunities arising out of RGN's refusal to acknowledge the termination of the Lease; and

b) ordering RGN to pay WRB's actual and reasonable costs of enforcing the Lease and reletting the Premises pursuant to Sections 7.7 and 10.3 of the Lease.

12340646.2

## PRAYER FOR RELIEF

WHEREFORE, WRB Partners, LLC respectfully requests that the Court enter a judgment in its favor and against RGN, as follows:

a)  Declaring that RGN has repudiated and/or materially breached the Lease;

b)  Declaring that the Lease is terminated and that RGN has no right of possession in the Premises;

c)  Declaring that WRB has no further obligation to perform under the Lease;

d)  Ordering RGN to pay WRB's expenses and attorneys' fees pursuant to Sections 7.7, 10.3 and 23.6 of the Lease;

e)  Ordering RGN to pay WRB's actual and reasonable costs of enforcing the Lease and reletting the Premises pursuant to Sections 7.7 and 10.3 of the Lease;

f)  Enjoining RGN and its contractor—and anyone acting for them or on their behalf—from continuing to perform demolition or construction work on the Premises, or any other work in connection with Tenant's Initial Improvements;

g)  Enjoining RGN to vacate the Premises and cooperate with WRB's reasonable efforts to relet the Premises to another tenant;

h)  Ordering RGN to pay WRB any and all damages cognizable by law, which exceed $75,000, including without limitation WRB's costs of performing the Lease, WRB's expenses arising out of RGN's anticipatory breach of the Lease and WRB's lost rent, revenue and other opportunities arising out of RGN's refusal to acknowledge the termination of the Lease; and

i)  Granting WBR any such other and further relief that the Court deems just and proper.

12340646.2

## **JURY DEMANDED**

WRB demands a jury trial on all issues so triable.

December 29, 2020

Respectfully submitted,

*/s/ Daniel A. DeMarco*
Aaron S. Evenchik (0073809)
Daniel A. DeMarco (0038920)
**HAHN LOESER & PARKS LLP**
200 Public Square, Suite 2800
Cleveland, OH 44114-2316
Phone: 216.621.0150
Fax:     216.241.2824
Email: aevenchik@hahnlaw.com
          dademarco@hahnlaw.com

*Attorneys for Plaintiff WRB Partners, LLC*

16

12340646.2

## <u>CERTIFICATE OF SERVICE</u>

The foregoing *First Amended Complaint for Declaratory Judgment, Injunctive Relief and Damages* was filed this 29th day of December 2020 using the Court's electronic filing (ECF) system through which copies of the same will be served upon all counsel of record in the litigation.


/s/ Daniel A. DeMarco
*One of the Attorneys for Plaintiff WRB Partners, LLC*

12340646.2