**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| WRB PARTNERS, LLC, | ) | |
| | ) | Case. No. 1:20-cv-2582 |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | JUDGE SOLOMON OLIVER |
| v. | ) | |
| | ) | |
| RGN-CLEVELAND II, LLC, | ) | **DEFENDANT'S FIRST AMENDED** |
| | ) | **ANSWER AND COUNTERCLAIMS** |
| | ) | **TO PLAINTIFF'S FIRST AMENDED** |
| Defendant/Counter-Plaintiff. | ) | **COMPLAINT** |

In Answer to Plaintiff WRB Partner, LLC's Fist Amended Complaint, Defendant RGN-Cleveland II, LLC states as follows:

## PARTIES, JURISDICTION AND VENUE

1.  Defendant admits the allegations in Paragraph 1.

2.  Defendant admits the allegations in Paragraph 2.

3.  Defendant admits that this Court has personal jurisdiction over Defendant.

4.  Defendant admits that this Court has subject matter jurisdiction over this matter.

5.  Defendant admits that venue is proper in this Court.

## NATURE OF THE CASE

6.  Defendant denies the allegations in the first sentence of Paragraph 6. Defendant admits the allegations in the second sentence of Paragraph 6, except for Plaintiff's characterization of Defendant as a "nominal tenant," which Defendant denies as vague. Defendant admits that more than 100 of Regus' SPEs have filed for Chapter 11 protections but denies that Defendant is poised to do the same. Defendant lacks sufficient knowledge or information to admit or deny the allegations in the fourth sentence in Paragraph 6 and on that basis denies them. Defendant lacks

1

sufficient knowledge or information to form a belief as to the truth of the allegations in the fifth sentence in Paragraph 6 and on that basis denies them.

7.      Defendant denies that it is "lobbying" Plaintiff to do anything—the roughly $1.6 million Tenant Improvement Allowance is a requirement of the Lease. Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations that the improvements will make the Premises unmarketable to potential tenants other than Defendant and on that basis denies them. Defendant denies the allegations in the second sentence of Paragraph 7.

8.      Defendant admits that Plaintiff purported to demand adequate assurances of Defendant, but Defendant denies that Plaintiff's purported demand affected Plaintiff's obligations under the Lease in any way. Defendant lacks sufficient knowledge or information to admit or deny the allegations regarding the nature of and motivation for Plaintiff's requests. The second sentence in Paragraph 8 contains allegations that state legal conclusions to which no response is required. To the extent a response is required, Defendant denies that it refused to provide adequate assurances, and that it repudiated or anticipatorily breached the Lease.  Defendant admits that it previously sought specific performance of Plaintiff's obligations under the Lease, but due to the passage of time coupled with Plaintiff's conduct in wrongfully declaring a termination of the lease, Defendant now withdraws its previous request for specific performance and instead seeks damages caused by Plaintiff's wrongful breach of the lease (by wrongfully and without justification declaring the lease to be terminated).  Defendant denies the allegations in the fourth sentence of Paragraph 8.

9.      Defendant admits that Plaintiff purports to seek the remedies listed in Paragraph 9. Defendant denies that Plaintiff is entitled to the requested relief.

**FACTS**

2

**A. WRB and RGN Enter into the Lease**

10.    Defendant admits the allegations in Paragraph 10.

11.    Defendant admits that its obligations under the Lease were guaranteed by IWG Global Investments SARL, but Defendant denies that IWG Global Investments SARL directly or indirectly owns Regus. Defendant admits the allegations in the second sentence of Paragraph 11.

12.    Defendant admits the allegations in Paragraph 12.

13.    Defendant admits that Article 17 of the Lease contains the provisions set forth in Paragraph 13, avers that the Lease is the best evidence of its own contents, and denies any allegations inconsistent therewith. To the extent that Plaintiff implies that Defendant failed to abide by the terms of the Lease, that conclusion is denied.

14.    Defendant admits that the Lease contains the provisions set forth in Paragraph 14, avers that the Lease is the best evidence of its own contents, and denies any allegations inconsistent therewith. To the extent that Plaintiff implies that Defendant failed to abide by the terms of the Lease, that conclusion is denied.

15.    Defendant admits that the Lease contains the provisions set forth in Paragraph 15, avers that the Lease is the best evidence of its own contents, and denies any allegations inconsistent therewith. To the extent that Plaintiff implies that Defendant failed to abide by the terms of the Lease, that conclusion is denied.

**B. RGN Fails to Provide Items Required by the Lease and Fails to Work Toward Completing Tenant's Initial Improvements While Dozens of Its Affiliates File for Bankruptcy.**

16.    Defendant admits that Plaintiff substantially completed Landlord's Initial Work but lacks sufficient knowledge or information to form a belief as to the truth of the allegations that the work was timely completed and that Plaintiff delivered the Premises in March 2020—Defendant

3

could not inspect the Premises until May 26, 2020 because of the COVID-19 pandemic—and on that basis denies them. Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in the second and third sentences of Paragraph 16 and on that basis denies them.  To the extent that Plaintiff implies that Defendant failed to perform its obligations under the Lease, that conclusion is denied.

17.     Defendant admits to the allegations in the first sentence of Paragraph 17, but avers that the delay was caused by a shutdown of construction work stemming from the COVID-19 pandemic. Defendant denies that it had not provided construction plans to Plaintiff by August 2020. Defendant admits that it had not begun substantial work on Tenant's Initial Improvements by August 2020, but avers that the delay was caused by a shutdown of construction work stemming from the COVID-19 pandemic. Defendant denies that it had not received a permit from the City of Cleveland to begin work by August 2020.  By way of further response, Defendant avers that any delay in producing the construction permit was caused by the City losing it.  Defendant denies that it has failed to perform any Lease obligations. Defendant denies the allegations in subsection a) of Paragraph 17. Defendant denies the allegations in subsection b) of Paragraph 17. Defendant admits that it had not delivered the builder's risk insurance policy described in subsection c) of Paragraph 17 to Plaintiff by August 2020, but Defendant denies that this is a violation of the Lease. Defendant admits that it had not provided Plaintiff with the names of its proposed contractor, subcontractors, and architect described in subsection d) of Paragraph 17 by August 2020, but Defendant denies that this is a violation of the Lease. Defendant admits that it had not provided Plaintiff with the W-9 Form and Contact Information Form described in subsection e) of Paragraph 17 by August 2020, but Defendant denies that this is a violation of the Lease.

18.     Defendant denies the allegations in Paragraph 18.

19.     Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegation that "RGN's inaction was particularly alarming" to Plaintiff and on that basis denies it. Defendant admits that dozens of Regus SPEs had declared bankruptcy by August 2020. Defendant denies that IWG Global Investments SARL is Defendant's parent company. Defendant admits that Plaintiff has accurately quoted or paraphrased statements made by IWG PLC's CEO. To the extent that Plaintiff implies that IWG PLC's CEO has publicly announced that Defendant would file for bankruptcy, Defendant denies that allegation.

20.     Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 20 and on that basis denies them. To the extent that Plaintiff alleges that Defendant failed to satisfy any of its obligations under the Lease, Defendant denies those allegations.

## C.  WRB Demands that RGN Provide It with Adequate Assurances but RGN Fails to Do So.

21.     Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations regarding Plaintiff's motive for sending the First Request for Adequate Assurances and on that basis denies them.  To the extent that the allegations imply that Plaintiff had a legal right to seek adequate assurances, Defendant denies those allegations. Defendant denies that Plaintiff's concern was reasonable. Defendant avers that the "First Request for Adequate Assurances" (Exhibit 4) is the best evidence of its own contents, and denies any allegations about those contents inconsistent with Exhibit 4. Defendant denies that Plaintiff was entitled to the requested documents at all, much less by the unreasonable and arbitrarily imposed August 28, 2020 deadline. As described in more detail in Defendant's response to Paragraph 17, which is incorporated herein, Defendant admits that it did not provide some of the items mentioned in the "First Demand for Adequate Assurances" by August 21, 2020, but Defendant denies that the

failure to deliver any of those items constituted a violation of the Lease. Furthermore, Defendant denies that Plaintiff's "First Request for Adequate Assurances" imposed any obligation on Defendant to respond or otherwise affected Plaintiff's obligations under the Lease in any way.

22.     Defendant denies that the "August 28 deadline" was a true deadline of any legal significance under the Lease. Defendant admits that it provided Plaintiff with some, but not all, of the requested documents. Defendant admits that it had not provided Plaintiff with a builder's risk insurance policy and the identities of its subcontractors by September 2020, but Defendant denies that it failed to provide Plaintiff with detailed construction plans. Defendant denies that it had any obligation—in the Lease or otherwise—to produce these documents by September 2020.

**D. RGN Abruptly Begins Work on the Premises Without Having Provided Adequate Assurances, while Its Affiliates Continue to Declare Bankruptcy in Droves.**

23.     As to the first sentence of Paragraph 23, Defendant denies that Plaintiff was entitled to adequate assurances and further denies that Defendant failed to perform in accordance with the Lease. Defendant admits that it retained a contractor and began demolition work on the Premises in September 2020. Defendant denies the allegations in the second sentence of Paragraph 23.  The third sentence states a conclusion of law to which no response is required.  To the extent a response is required, Defendant denies the allegations.

24.     Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations concerning Plaintiff's mental impressions in the first and second sentences of Paragraph 24 and on that basis denies them. Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations concerning Plaintiff's efforts outside of Defendant's purview to obtain a competing bid and on that basis denies them. Defendant admits to having received a competing bid from WRB's suggested contractor, but avers that the bid was

higher than Defendant's contractor.  Accordingly, Defendant denies the allegations in the final sentence of Paragraph 24 and that Defendant "failed to follow through."

25.     Defendant admits that other Regus SPEs continued to file for bankruptcy during this period but denies that filings occurred "en masse." Defendant denies that the paragraph of the James S. Feltman Declaration supports Plaintiff's contention that in the Regus SPEs' bankruptcy proceedings, the SPEs "made clear that they are highly integrated with each other (legally, financially and operationally), that they function under a business model involving myriad intercompany transfers, transactions and obligations, and that through the bankruptcies or otherwise they intend to seek 'forbearances, temporary accommodations and where possible, permanent modifications' from their landlords." Plaintiff wrongly implies that Paragraph 27 of the Declaration reveals a concerted effort to use the bankruptcy process to force landlords to renegotiate their leases with Regus SPEs. In reality, Paragraph 27 of the Declaration merely describes the challenges many SPEs are facing during the COVID-19 pandemic and the measures they have taken to navigate these troubling times. For that reason, Defendant denies Plaintiff's allegations in the fourth sentence of Paragraph 25 of its Complaint.

26.     Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 26 and on that basis denies them. Defendant denies that Plaintiff's alleged concerns were reasonable.

**E.  WRB Again Requests Adequate Assurances from RGN, Which Again Fails to Provide Them.**

27.     Defendant admits that Plaintiff sent a "Second Request for Adequate Assurances" to Defendant on October 3, 2020, but Defendant denies that Plaintiff had "reasonable concerns about RGN's ability to perform." Defendant admits that Plaintiff sought documents from Defendant, but Defendant denies Plaintiff had any right to receive those documents. Defendant

lacks sufficient knowledge or information to form a belief as to the truth of the allegations that Plaintiff requested those documents to "give WRB confidence that RGN was able to perform," and on that basis denies the allegation. Defendant further denies that Plaintiff's alleged lack of confidence was reasonable. Defendant admits the allegation in the third sentence of Paragraph 27, but denies that Plaintiff was entitled to the requested documents at all, much less by the unreasonable and arbitrarily imposed October 12, 2020 deadline. Furthermore, Defendant denies that Plaintiff's "Second Request for Adequate Assurances" imposed any obligation on Defendant to respond or otherwise affected Plaintiff's obligations under the Lease in any way.  Exhibit 7 is the best evidence of its own contents, and Defendant denies any allegations about those contents inconsistent with Exhibit 7.

28.     Defendant denies that the "October 12, 2020 deadline" was a true deadline of any legal significance under the Lease. Defendant admits that it provided Plaintiff with some, but not all, of the materials requested in the Second Request for Adequate Assurances. Defendant denies that Plaintiff is entitled to any of these materials under the Lease or otherwise.

29.     Defendant denies the allegations in Paragraph 29. Nothing in the Lease required Defendant to produce the requested materials by Plaintiff's arbitrary deadlines.  Additionally, the Lease is the best evidence of its own contents, and Defendant denies any allegations inconsistent therewith.

30.     Defendant denies the allegations in the first sentence of Paragraph 30. The second sentence of Paragraph 30 contains legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations.

31.     The first sentence of Paragraph 31 contains legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations. Defendant

admits that Plaintiff sent a letter declaring the Lease terminated to Defendant on October 13, 2020 but denies the letter's allegations that Defendant breached the Lease. Exhibit 8 is the best evidence of its own contents, and Defendant denies any allegations about those contents inconsistent with Exhibit 8.

**F. WRB Requires a Declaration that RGN Has Repudiated the Lease, that the Lease Is Terminated, and that WRB Is No Longer Obligated to Perform.**

32.     Defendant denies that it has not obtained the necessary permits.  Defendant admits that on October 9, 2020, Plaintiff demanded that Defendant cease all work on the Premises. Exhibit 9 is the best evidence of its own contents, and Defendant denies any allegations about those contents inconsistent with Exhibit 9.

33.     Defendant denies the allegations in Paragraph 33.

34.     Defendant denies that it has repudiated or otherwise breached the Lease.  Defendant lacks sufficient knowledge or information to form a belief as to the truth of Plaintiff's allegations regarding its willingness to perform under the Lease, including its willingness to fund Tenant's Initial Improvements, and on that basis denies those allegations. Defendant denies the allegations in second sentence of Paragraph 34.

35.     Paragraph 35 contains legal conclusions to which no response is required. To the extent that a response is required, Defendant denies that Plaintiff is entitled to such a declaration from the Court.

**G. WRB Requires an Injunction Prohibiting RGN from Continuing to Perform Work on the Premises.**

36.     Paragraph 36 contains legal conclusions to which no response is required. To the extent that a response is required, Defendant denies the allegations.  Defendant further denies that it failed to acquire a permit to construct Tenant's Initial Improvement, denies that it repudiated the

Lease, and denies that Plaintiff properly terminated the Lease. Defendant admits that Plaintiff instructed Defendant to cease and desist any construction or demolition efforts and admits that it had not explicitly confirmed, at the time of the filing of the First Amended Complaint, that it would cease and desist from performing demolition and construction work on the Premises. But Defendant avers that it had called off the contractors from the site at the time of the filing of the First Amended Complaint.

37.　　The first sentence of Paragraph 37 contains legal conclusions to which no response is required.　To the extent that a response it required, Defendant denies those allegations. Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in the second sentence of Paragraph 37 and on that basis denies them. Defendant denies the allegations in the third sentence of Paragraph 37. Defendant denies Plaintiff's allegation that it is imminently insolvent and lacks sufficient knowledge or information to a form a belief as to the truth of the allegations in the fourth sentence of Paragraph 37 and on that basis denies them.

**H. RGN's Refusal to Acknowledge the Termination of the Lease Is Harming WRB.**

38.　　Defendant denies that Plaintiff duly terminated the Lease and Defendant's right of possession in the Premises. Defendant admits that it previously sought specific performance of Plaintiff's obligations under the Lease, but due to the passage of time coupled with Plaintiff's conduct in wrongfully declaring a termination of the lease, Defendant now withdraws its previous request for specific performance and instead seeks damages caused by Plaintiff's wrongful breach of the lease (by wrongfully and without justification declaring the lease to be terminated). Defendant denies the allegations in the third sentence of Paragraph 38.

39.　　The first sentence of Paragraph 39 contains legal conclusions to which no response is required.　To the extent that a response it required, Defendant denies those allegations. Defendant

10

denies the allegations in the second sentence of Paragraph 39.  Plaintiff brough this situation upon itself by purporting to terminate the Lease when Defendant had not breached or repudiated the Lease. Defendant lacks sufficient knowledge or information to form a belief as to Plaintiff's intentions and efforts to relet the Premises and on that basis denies those allegations. Defendant denies that its actions caused Plaintiff to sustain damages. Defendant denies that is has breached or repudiated the Lease. Defendant admits that it previously sought specific performance of Plaintiff's obligations under the Lease, but due to the passage of time coupled with Plaintiff's conduct in wrongfully declaring a termination of the lease, Defendant now withdraws its previous request for specific performance and instead seeks damages caused by Plaintiff's wrongful breach of the lease (by wrongfully and without justification declaring the lease to be terminated).

<u>**Count I:**</u>
**Declaratory Judgment**

40.     Defendant repeats and incorporates its responses to all preceding paragraphs as if fully set forth herein.

41.     Paragraph 41 contains legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 41.

42.     Paragraph 42 contains legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 42.

43.     Paragraph 43 contains legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 43.

44.     Paragraph 44 contains legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 44.

11

45.     Paragraph 45 contains legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 45. Defendant further denies that Plaintiff is entitled to the requested relief.

<u>**Count II:**</u>
**Injunctive Relief**

46.     Defendant repeats and incorporates its responses to all preceding paragraphs as if fully set forth herein.

47.     Paragraph 47 contains legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 47. Defendant further denies that Plaintiff will prevail on the merits of this litigation.

48.     Paragraph 48 contains legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 48.

49.     Paragraph 49 contains legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 49.

50.     Paragraph 50 contains legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 50.

51.     Paragraph 51 contains legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 51. Defendant further denies that Plaintiff is entitled to the requested relief.

<u>**Count III:**</u>
**Breach of Contract**

52.     Defendant repeats and incorporates its responses to all preceding paragraphs as if fully set forth herein.

53.     Defendant admits that the Lease was a valid and binding contract, and asserts that Plaintiff wrongfully purported to terminate the Lease.

54.     Paragraph 54 contains legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 54.

55.     Paragraph 55 contains legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 55.

56.     Paragraph 56 contains legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 56.

57.     Paragraph 57 contains legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 57. Defendant further denies that Plaintiff is entitled to the requested relief.

## **PRAYER FOR RELIEF**

Defendant denies that Plaintiff is entitled to any relief, including the requested relief.

13

## AFFIRMATIVE DEFENSES

### AFFIRMATIVE DEFENSE NO. 1

The Complaint is barred, in whole or in part, because Plaintiff fails to state a claim upon which relief may be granted.

### AFFIRMATIVE DEFENSE NO. 2

The Complaint is barred, in whole or in part, by Plaintiff's unclean hands.

### AFFIRMATIVE DEFENSE NO. 3

The Complaint is barred, in whole or in part, by Plaintiff's contractual breaches.

### AFFIRMATIVE DEFENSE NO. 4

Defendant reserves the right to assert and rely on all additional defenses which become available or apparent in this action.

## COUNTERCLAIMS

Defendant RGN-Cleveland II, LLC ("RGN"), by its attorneys, files the following Counterclaims against Plaintiff WRB Partners, LLC ("WRB").

## THE PARTIES

1.      Counter-Plaintiff RGN is a Delaware limited liability company. RGN's sole member is Regus Corporation, a Delaware corporation with its principal place of business in Texas.

2.      Upon information and belief, Counter-Defendant WRB is an Ohio limited liability company with its principal place of business in Ohio, and all of WRB's members are citizens of Ohio.

## JURISDICTION AND VENUE

3.       This Court has jurisdiction over RGN's counterclaims based on 28 U.S.C. § 1332. RGN is a citizen of Delaware and Texas and WRB is a citizen of Ohio.

4.      Furthermore, RGN alleges that WRB has breached the Lease and seeks recovery of direct damages totaling at least $434,130.

5.      Venue is proper in this case pursuant to 28 U.S.C. §§ 1391(b) and (c) because the claims set forth below took place in Cuyahoga County, Ohio, which is in the North District of Ohio, Eastern Division, and because the WRB resides in Cuyahoga County.

## STATEMENT OF THE CASE

6.      This is a simple case. Almost one year ago, RGN and WRB entered into a valid Lease Agreement that required, among other things, WRB to pay RGN up to $1,611,780.00 to turn the Premises into a functional co-working space. It is abundantly clear to RGN that WRB no longer

15

desires to be bound by the terms of the Lease, including the requirement to pay RGN the $1,611,780.00 to which it was entitled.

7.    Rather than attempt to raise its purported concerns in good faith or re-negotiate based on those purported concerns, WRB concocted a pretextual justification to terminate the Lease, which is set forth in two letters improperly demanding adequate assurances that RGN would perform its obligations under the Lease by arbitrary and unreasonable deadlines. WRB's demand for the items listed in the letters, and its demand that those items be delivered by deadlines that WRB arbitrarily selected, are not authorized by the Lease.

8.    At no point prior to WRB's letters did RGN fail to fulfill its contractual obligations, nor did RGN directly or indirectly convey to WRB that it would be unable to fulfill its obligations in the future.[1] According to the letters, RGN's failure to provide the requested documents and assurances by WRB's deadlines would constitute a repudiation of the Lease, thereby excusing WRB from future performance. WRB's threats to terminate the Lease are devoid of any legal basis—in the Lease or otherwise—and ignore the Lease's provisions regarding default.

9.    On October 13, 2020, WRB notified RGN that WRB was terminating the Lease effective immediately. Because WRB did not follow the Lease's default and termination procedures and RGN had no obligation—in the Lease or otherwise—to provide WRB with adequate assurances, WRB's purported termination of the Lease was improper and amounts to a breach of contract. As a result of WRB's breach of the Lease, RGN sustained direct monetary damages totaling at least $434,130. In addition to seeking such damages, RGN seeks reimbursement of all costs and expenses, including attorneys' fees and expenses, pursuant to the Lease.

---

[1] Even worse, WRB fabricated a claim that RGN failed to obtain a permit from the City of Cleveland authorizing it to begin work on the Premises. *See* Am. Compl. ¶ 23.

## STATEMENT OF FACTS

### A.  RGN and WRB Enter into the Lease

10.     On or about December 13, 2019, RGN (as tenant) and WRB (as landlord) entered into a Lease Agreement.  Lease Agreement, at p.1 ("the Lease").  A copy of the Lease is attached hereto as Exhibit 1.

11.     Under the terms of the Lease, RGN would rent the Premises from WRB for a term of twelve (12) years, beginning on the Rent Commencement Date. *Id.* § 1.1, at p. 4.

12.     RGN is further required to complete a build-out of the Premises ("Tenant's Initial Improvements") to turn the building into a functional co-working space. *Id.* § 17.3.

13.     For its part, WRB was required to reimburse RGN up to $1,611,780.00 ("Tenant Improvement Allowance") for its Initial Improvements. *Id.* § 1.1, at p. 6.

14.     Article 23.6 of the Lease states that the non-prevailing party in any litigation or dispute arising under the Lease shall reimburse the prevailing party for all costs and expenses arising therefrom, including reasonable attorneys' fees and expenses. *Id.* § 23.6.

### B.  WRB Improperly Makes Demands for Documents and Reasonable Assurances Even Though WRB is Not Entitled to Them Under the Lease.

15.     On August 21, 2020, WRB sent a letter to RGN purporting to demand adequate assurances that RGN would perform under the Lease. *See* August 21 Letter, at pp. 1–3.  A copy of the August 21 Letter is attached hereto as Exhibit 2.

16.     WRB demanded that RGN produce various documents contemplated by the Lease even though RGN was under no contractual obligation to provide them at that time. *See id.*

17.     WRB set an arbitrary and unreasonable deadline of August 28, 2020—only one week—for RGN to provide WRB with documents to which WRB had no entitlement. *See id.* at p. 3.

17

18.     WRB warned that RGN's failure to turn over such documents would be considered a repudiation of RGN's obligations under the Lease. *See id.*

19.     Even though WRB failed to comply with the default notice provisions of the Lease, WRB claimed to reserve all rights to exercise any available remedies under those same provisions. *See id.*

20.     At no point prior to WRB's August 21 letter did RGN fail to fulfill its contractual obligations, nor did RGN directly or indirectly convey to WRB that it would be unable to fulfill its obligations in the future.

21.     WRB appears to have sent this letter in a calculated attempt to terminate the Lease and avoid paying RGN its Tenant Improvement Allowance.

**C.  WRB Ignores the Default Provisions of the Lease Again and Makes a Second Improper Demand for Adequate Assurances in an Effort to Terminate the Lease Without Paying RGN its Tenant Improvement Allowance.**

22.     On October 3, 2020, WRB sent a second letter to RGN purporting to demand adequate assurances that RGN would perform under the Lease. *See* October 3 Letter, at pp. 1–3. A copy of the October 3 Letter is attached hereto as Exhibit 3.

23.     In addition to repeating some of the demands from the first letter, WRB demanded that RGN produce numerous financial statements, projections, and budgets, to which WRB has no entitlement under the Lease. *See id.*

24.     The October 3 Letter fails to comply with the default notice provisions of the Lease. *See id.*

25.     Just as WRB did in its first letter, WRB set an arbitrary and unreasonable deadline (October 12, 2020) for RGN to provide WRB with documents to which WRB had no entitlement. *See id.* at p. 3.

18

26.     At no point prior to WRB's second letter did RGN fail to fulfill its contractual obligations, nor did RGN directly or indirectly convey to WRB that it would be unable to fulfill its obligations in the future.

27.     WRB appears to have sent this letter, too, in a calculated attempt to terminate the Lease and avoid paying RGN its Tenant Improvement Allowance.

28.     Although RGN was under no obligation to provide any of the demanded documents by WRB's arbitrary and unreasonable deadlines, if at all, RGN provided a substantial amount of documentation to WRB in an effort to meet their purported concerns.

**D.  WRB Improperly Terminates the Lease, Causing RGN to Sustain Damages.**

29.     On October 13, 2020, WRB sent a third letter to RGN in which WRB purported to terminate the Lease effective immediately. *See* October 13 Letter, at pp. 1–2.  A copy of the October 13 Letter is attached hereto as Exhibit 4.

30.     The October 13 Letter fails to comply with the default notice provisions of the Lease. *See id.*

31.     WRB's termination was improper and amounts to a material breach of the Lease.

32.     RGN has already expended at least $434,130 in architectural and engineering fees, sheet metal, and mobilization, demolition, and construction costs in reliance on the terms of the Lease.

**FIRST COUNTERCLAIM**
(Breach of Contract)

33.     RGN repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

34.     WRB and RGN entered into the Lease, which was a valid and enforceable contract. At all times, RGN complied with the provisions and terms of the Lease and demonstrated its readiness, willingness, and ability to perform its obligations under the Lease.

35.     WRB repudiated and materially breached the Lease by improperly purporting to terminate the Lease and refusing to perform its remaining obligations under the Lease.

36.     At no point prior to WRB's improper termination of the Lease did RGN fail to fulfill its contractual obligations, nor did RGN repudiate the Lease.

37.     As a result of WRB's breach of the Lease, RNG has suffered direct damages totaling at least $434,130.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Counterclaim-Plaintiff RGN respectfully requests judgment as follows:

(a)     Direct damages in the amount of at least $434,130.

(b)     Pursuant to Article 23.6 of the Lease, all costs and expenses, including attorneys' fees and expenses.

(c)     For such other and further relief as this Court may deem just and proper.

## **JURY DEMANDED**

RGN demands a jury trial on all issues so triable.

Dated:  February 17, 2021                               Respectfully submitted,

                                                         */s/ Brandon Mordue*
                                                         Jeffery D. Ubersax (0039474)
                                                         Brandon Mordue (0092146)
                                                         KUSHNER & HAMED CO., LPA
                                                         1375 East 9th Street, Suite 1930
                                                         Cleveland, OH 44114
                                                         Phone:    (216) 696-6700
                                                         Fax:       (216) 696-6772
                                                         jdubersax@kushnerhamed.com
                                                         bmordue@kushnerhamed.com

                                                         Eric Pinker (*admitted pro hac vice*)

Greg Brassfield (*admitted pro hac vice*)
Bennett G. Hampilos (*admitted pro hac vice*)
Lynn Pinker Hurst & Schwegmann, LLP
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
(214) 981-3800 | (214) 981-3839 (fax)
epinker@lynnllp.com
gbrassfield@lynnllp.com
bhampilos@lynnllp.com

*Attorneys for Defendant RGN-Cleveland II, LLC*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 17th day of February, 2021, a copy of the foregoing First Amended Answer and Counterclaims to Plaintiff's First Amended Complaint was served on all parties by means of the court's electronic filing system.

*/s/ Brandon Mordue*
*Attorney for Defendant*
*RGN-Cleveland II, LLC*